**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **SUNDT/KIEWIT, A JOINT VENTURE, KIEWIT INFRASTRUCTURE SOUTH, CO. AND SUNDT CONSTRUCTION, INC.**<br><br>Plaintiffs<br>v.<br><br>**AMERICAN INTERNATIONAL GROUP, INC. ("AIG") AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**<br><br>Defendants. | Case No.<br><br>**JURY TRIAL DEMAND** |

## COMPLAINT

Sundt/Kiewit, A Joint Venture ("SKJV"), Kiewit Infrastructure South, Co. ("Kiewit") and Sundt Construction, Inc. ("Sundt") (collectively, "Plaintiffs") file this Complaint against Defendant American International Group, Inc. ("AIG") and Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") (collectively, "Defendants") and allege upon information and belief as follows:

## THE PARTIES

1. Plaintiff, SKJV, is a joint venture, made and entered into on or about April 7, 2022, between Plaintiffs Kiewit Infrastructure South, Co. ("Kiewit") and Sundt Construction, Inc. ("Sundt").

2. Plaintiff Kiewit is a corporation formed under the laws of the State of Delaware, with its principal place of business at 1550 Mike Fahey Street, Omaha, NE 68102.

3. Plaintiff Sundt is a corporation formed under the laws of the State of Arizona, with its principal place of business at 2620 South 55th Street, Tempe, AZ 85282.

4. Defendant AIG is a corporation formed under the laws of the State of Delaware, with its principal place of business at 1271 Avenue of the Americas, New York, NY 10020.

5. Defendant National Union is a corporation formed under the laws of the State of Pennsylvania, with its principal place of business at 1271 Avenue of the Americas, New York, NY 10020-1304.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) insofar as this is a diversity action between the citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

7. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) insofar as a substantial part of the events and omissions which give rise to this legal action occurred in this District, including that the insurance policy at issue was delivered to the named insured at its principal place of business in Texas, and the incident giving rise to the claim occurred in Texas.

8. Moreover, the Defendants are subject to the personal jurisdiction of this Court because the Defendants transacted and currently transact business in Texas.

## FACTUAL BACKGROUND

9. This is an insurance coverage dispute between Plaintiffs, who are additional insureds on the insurance policy at issue, and Defendants who issued the policy. Because Defendants have denied coverage to Plaintiffs, Plaintiffs are compelled to bring this action.

10. In or about April 2022, Plaintiffs made and entered into a joint venture agreement[1] for the construction of the Blue Sky Water Reclamation Facility Project (the "Project") located at 751 County Road 401, Taylor, Texas.

11. SKJV hired Tex Mix Partners, LLC d/b/a Tex-Mix Concrete ("Tex-Mix") to furnish concrete at the Project.

***The Agreements for the Project***

12. On or about June 15, 2022, SKJV sent a Letter of Intent ("LOI") to Tex-Mix to furnish "Auger Cast In Place (ACIP) Grout Mix" to the Project location.[2]

13. The LOI stated that it was SKJV's "commitment to contract the batching and delivery of the ACIP grout mix for the Project to [Tex-Mix] for an approximate quantity of 50,000 CY at the unit rates quoted on June 8, 2022."

14. The LOI further stated that "[u]pon completion of an internal review with the Project client by [SKJV], the final conformed Purchase Agreement, Special Conditions, and Exhibits (Agreement) will be forwarded for review and comment by [Tex-Mix]. Both parties shall expeditiously and in good faith negotiate a mutually agreeable contract and acceptable terms and conditions, to include required flow down terms included in SKJV's agreement with Owner, for the Scope of Work to be performed by [Tex-Mix]. Purchase Order(s) will be provided for initial quantities until such time as Purchase Agreement has been executed by both parties."

15. The LOI also stated that a Purchase Order issued to Tex-Mix may reach an amount up to $1,000,000.

16. The LOI expressly stated that "Evidence of Insurance must be submitted prior to any payment or deliveries to the site can occur."

---

[1] A true and accurate copy of the joint venture agreement is attached hereto as **Exhibit 1**.
[2] A true and accurate copy of the Letter of Intent is attached hereto as **Exhibit 2**.

17. The LOI also expressly stated the "Award Date" for Tex-Mix's work at the Project was "June 15, 2022."

18. On June 25, 2022, SKJV sent a Purchase Order to Tex-Mix for supplying grout to the Project.[3]

19. In the June 25, 2022 email, SKJV also reiterated that the Purchase Order will "get us rolling" and "keep us going" until the Purchase Agreement was provided. SKJV also stated that the Purchase Order contained details and clarifications regarding "fuel surcharge and short loads."

20. Upon information and belief, around late June 2022, pursuant to the LOI, and the forthcoming Purchase Agreement, Tex-Mix began supplying grout mix to the Project.

21. As of the date Tex-Mix first supplied grout to the Project, SKJV and Tex-Mix had a mutual agreement which included Tex-Mix's obligation to provide certain insurance for its operations, including commercial automobile liability insurance which would also provide additional insured status to SKJV (the "Verbal Agreement").

22. On July 26, 2022, SKJV sent an email to Tex-Mix, providing a draft "Purchase Agreement."[4]

23. The draft Purchase Agreement reduced to writing the Verbal Agreement obligation to provide commercial automobile liability insurance which would also provide additional insured status to SKJV.

24. In the July 26, 2022 email, SKJV reiterated that the Purchase Order is essentially a placeholder for the forthcoming Purchase Agreement.

---

[3] A true and accurate copy of the email is attached hereto as **Exhibit 3**.
[4] A true and accurate copy of the email is attached hereto as **Exhibit 4**.

25. On August 13, 2022, SKJV sent an email to Tex-Mix containing a revised draft "Purchase Agreement".[5]

26. On August 30, 2022, SKJV sent an email to Tex-Mix, providing a standard form Certificate of Insurance ("COI"), showing how this mandatory form was to be completed for the forthcoming Purchase Agreement.[6]

27. On August 31, 2022, SKJV sent an email to Tex-Mix inquiring as to the status of the Purchase Agreement.[7] On the same day, Tex-Mix replied it will return the "Purchase Agreement" that same week.[8]

28. On September 6, 2022, SKJV sent another email to Tex-Mix inquiring as to the status of the Purchase Agreement.[9]

29. On September 7, 2022, Tex-Mix sent an email to SKJV stating that the Purchase Agreement was with its legal team.[10]

30. On September 14, 2022, SKJV sent another email to Tex-Mix inquiring as to the status of the Purchase Agreement.[11]

31. On September 19, 2022, Tex-Mix responded to SKJV's September 14, 2022 email, stating that Tex-Mix will provide the Purchase Agreement at the end of that week.[12]

32. On September 27, 2022, SKJV sent Tex-Mix an email containing a revised draft of the Purchase Agreement.[13]

---

[5] A true and accurate copy of the email is attached hereto as **Exhibit 5**.
[6] A true and accurate copy of the email is attached hereto as **Exhibit 6**.
[7] A true and accurate copy of the email chain is attached hereto as **Exhibit 7**.
[8] Id.
[9] Id.
[10] Id.
[11] Id.
[12] Id.
[13] A true and accurate copy of the email is attached hereto as **Exhibit 8**.

33. On September 28, 2022, Tex-Mix sent an email to SKJV containing the Purchase Agreement.[14]

34. In October 2022, SKJV and Tex-Mix exchanged emails wherein drafts of the forthcoming Purchase Agreement with multiple revisions were attached.[15]

35. The Purchase Agreement was executed on December 5, 2022.[16]

36. The Verbal Agreement remained in effect between SKJV and Tex-Mix until it was replaced by the executed Purchase Agreement.

37. The executed Purchase Agreement included the same obligation of Tex-Mix to provide commercial automobile liability insurance for its operations, including additional insured status to SKJV, as had been included in the Verbal Agreement.

38. The insurance requirements in the Purchase Agreement were not modified by either party between the time SKJV initially presented it to Tex-Mix on July 26, 2022 and the time the parties executed it on December 5, 2022.

39. On December 8, 2022, Tex-Mix provided SKJV with a COI naming SKJV as an additional insured for Tex-Mix's policy(ies) for the Project.[17]

***The Underlying Action***

40. On or about November 8, 2022, Robert Searles was injured while he was operating a skid steer at the Project (the "Incident").

41. At the time of the Incident, Robert Searles was an employee of Kiewit Foundations Co. ("KFC").

---

[14] A true and accurate copy of the email is attached hereto as **Exhibit 9**.
[15] A true and accurate copy of the email chain is attached hereto as **Exhibit 10**.
[16] A true and accurate copy of the Purchase Agreement is attached hereto as **Exhibit 11**.
[17] A true and accurate copy of the COI is attached hereto as **Exhibit 12**.

42. Allegedly, the skid steer was struck by a Tex-Mix cement truck reversing, which was being operated by an employee of Tex-Mix.

43. Following the Incident, Robert Searles filed a lawsuit against Aaron Ortiz, Tex-Mix, Gage Consulting LLC, and SKJV stylized as <u>Robert Searles v. Tex Mix Partners, LLC d/b/a Tex-Mix Concrete, Gage Consulting LLC, Sundt/Kiewit, A Joint Venture</u>, Case No.24-0117-C480 (the "Underlying Action").[18]

44. The Underlying Action alleges that Robert Searles' injuries were caused by the negligence of Tex-Mix, SKJV and KFC in operating the truck.

## THE POLICY

45. Tex-Mix procured a business auto liability insurance policy from Defendants, effective for the period of March 1, 2022 through March 1, 203 (the "Policy").[19]

46. The Policy provides coverage for, among other things, "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."[20]

47. The Policy defines an "insured" as:

a. "You for any covered 'auto'."

b. "Anyone else while using with your permission a covered 'auto' you own, hire or borrow."[21]

---

[18] A true and accurate copy of the second amended complaint filed in the Underlying Action is attached hereto as **Exhibit 13**.
[19] A true and accurate copy of the Policy is attached hereto as **Exhibit 14**.
[20] <u>See</u> **Exhibit 14**, CA 00 01 13, 2.
[21] <u>Id.</u>

48. The Policy states that "the words 'you' and 'your' referred to the Named Insured shown in the Declarations."[22]

49. The Declarations page in the Policy lists Tex-Mix Partners Ltd as the Named Insured.[23]

50. The Policy contains form number 87950 (9/14), which amends the definition of an "insured" under the Policy to include "[a]ny person or organization shown in the schedule above, to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of use of a covered 'auto'."[24]

51. The "schedule" mentioned in form number 87950 (9/14) states,"[a]ny person or organization for whom you are contractually bound to provide Additional Insured status but only to the extent of such person's or organizations [sic] liability arising out of the use of a covered 'auto'."[25]

52. The Policy defines "auto" as:

a. "A land motor vehicle, 'trailer' or semitrailer designed for travel on public roads; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or licensed or other motor vehicle insurance law where it is licensed or principally garaged."[26]

---

[22] **Exhibit 14**, CA 00 01 13, 1.
[23] **Exhibit 14**, 46169 (4/21), 1.
[24] **Exhibit 14**, 87950 (9/14), 1
[25] Id.
[26] **Exhibit 14**, CA 00 01 13, 9.

53. The Policy does not define "contract" or "agreement."

54. The Policy contains form number 74445 (10/99), which states that the "insurance afforded under this policy to an additional insured will apply as primary insurance for such additional insured where so required under an agreement executed prior to the date of accident."[27]

55. The Policy, including the terms stated above, was in effect at all times during the Verbal Agreement, including the date of the Incident.

## THE CLAIM

56. On June 18, 2024, Kiewit, on behalf of SKJV, tendered the Underlying Action to Defendants for defense and indemnity as an insured under the Policy.[28]

57. In its tender, SKJV explained that SKJV contracted with Tex-Mix to supply grout mix to the Project.

58. SKJV highlighted that SKJV and Tex-Mix had entered into an agreement for Tex-Mix to supply grout to the Project via the LOI dated June 15, 2022.

59. On December 9, 2024, Kiewit, on behalf of SKJV, updated its tender to Defendants, informing Defendants that plaintiff in the Underlying Action had filed a new lawsuit, replacing the initial lawsuit.

### *Plaintiffs are Entitled to Coverage Under the Policy*

60. The Policy provides coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."

61. The Policy defines "auto," among other things, as a land vehicle.

---

[27] **Exhibit 14**, 74445 (10/99), 1.
[28] A true and accurate copy of the tender to AIG and National Union is attached hereto as **Exhibit 15**.

62. The cement truck is a land vehicle.

63. The Policy includes as an "insured" "[a]ny person or organization shown in the schedule above, to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy."

64. The Policy does not define "contract" or "agreement."

65. The Verbal Agreement constitutes a "contract" between SKJV and Tex-Mix.

66. The Verbal Agreement constitutes an "agreement" between SKJV and Tex-Mix.

67. The Purchase Agreement constitutes a "contract" between SKJV and Tex-Mix.

68. The Purchase Agreement constitutes an "agreement" between SKJV and Tex-Mix.

69. The Verbal Agreement commenced before the Incident occurred.

70. Accordingly, Tex-Mix was part of an agreement requiring Tex-Mix to provide additional insured status to SKJV at the time of the Incident.

71. As such, SKJV was an insured on the Policy at the time of the Incident.

72. Upon execution of the Purchase Agreement, Tex-Mix was part of a written agreement requiring Tex-Mix to provide additional insured status to SKJV.

73. The Policy does not limit coverage for additional insureds to accidents or liabilities which happen after the additional insured is added to the Policy. Rather, being an additional insured, SKJV is entitled to coverage for all bodily injuries occurring during the Policy's policy period. As such , SKJV is entitled to coverage under the Policy.

74. Coverage under the Policy includes, but is not limited to, defense in the Underlying Action.

75. Coverage under the Policy includes, but is not limited to, indemnity in the Underlying Action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

76. Plaintiffs reallege and incorporate by reference each and every allegation set forth above as if set forth fully herein.

77. Defendants have denied coverage to Plaintiffs.

78. A dispute has arisen between Plaintiffs and Defendants regarding whether AIG and National Union are obligated to defend and indemnify Plaintiffs in the Underlying Action.

79. An actual and justifiable controversy exists between Plaintiffs and Defendants as to their duties and obligations under the Policy.

80. A judicial declaration is necessary and appropriate to determine the rights and duties of the parties under the Policy.

81. By reason of the foregoing, Plaintiffs seek a declaration that Defendants must defend and indemnify Plaintiffs.

### SECOND CAUSE OF ACTION
**(Breach of Contract)**

82. Plaintiffs reallege and incorporate by reference each and every allegation set forth above as if set forth fully herein.

83. As insureds, Plaintiffs are entitled to coverage under the Policy, including, but not limited to, defense and indemnity in the Underlying Action.

84. The Policy is a valid and enforceable contract that was in full force and effect at all relevant times.

85. Plaintiffs complied with all Policy conditions precedent to coverage.

86. Upon information and belief, all premiums owed under the Policy were duly paid.

87. Plaintiffs performed all conditions and covenants under the Policy, except as excused, waived, or otherwise prevented by Defendants.

88. Under the Policy, Defendants promised to pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."

89. The Underlying Action is a suit that seeks damages for "bodily injury" that Plaintiffs are legally obligated to pay.

90. All Policy conditions applicable to SKJV have been satisfied.

91. Because the allegations in the Underlying Action create at least a possibility of coverage under the Policy, Defendants have a duty to defend Plaintiffs.

92. Defendants have a duty to indemnify Plaintiffs.

93. Defendants breached the Policy by denying coverage to Plaintiffs.

94. To date, Defendants have failed to honor their contractual obligation to defend and indemnify Plaintiffs.

95. Defendants specifically breached the Policy by:

a. Wrongfully denying Plaintiffs a defense for a claim that clearly fell within the possibility of coverage; and

b. Wrongfully refusing to participate in good faith settlement efforts on SKJV's behalf (the Defendants' duty to indemnify SKJV).

96. As a direct and proximate result of Defendants' ongoing breach of contract, Plaintiffs have suffered and continue to suffer damages, including attorneys' fees, costs, and consequential damages for:

a. Funding their own defense in the Underlying Action;

b. Being forced to incur fees to initiate the present coverage litigation by Defendants' wrongful denial of coverage; and

c. Participating in and potentially funding settlement without insurance.

**MONETARY RELIEF**

97. As a result of the foregoing, Plaintiffs seek monetary relief of at least $2,000,000.00.

**JURY DEMAND**

98. Plaintiffs demand a jury trial on any issues triable of right.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment and respectfully request that the Court award:

a. A declaration that Plaintiffs are entitled to coverage under the Policy;

b. A declaration that Plaintiffs are entitled to a defense in the Underlying Action under the Policy;

c. A declaration that Plaintiffs are entitled to indemnification up to the full limit of liability under the Policy;

d. Actual damages caused by Defendants' breach of the Policy;

e. Compensatory damages;

f. Reasonable and necessary attorneys' fees;

g. Post-judgment interest as permitted by law;

h. All costs of suit; and

i. Such other legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

By: ____________________________

Jeremiah M. Welch
Attorney-in-Charge
Federal Bar No. 3976067
Daniel A. Thompson
Federal Bar No. 3965005
SAXE DOERNBERGER & VITA P.C.
One BetterWorld Circle
Suite 300
Temecula, CA 92590
(951) 365-3145
jwelch@sdvlaw.com
dthompson@sdvlaw.com
*ATTORNEYS FOR PLAINTIFFS SUNDT/KIEWIT, A JOINT VENTURE, KIEWIT INFRASTRUCTURE SOUTH, CO. AND SUNDT CONSTRUCTION, INC.*